IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KIMBERLY YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cv-2481-KHV-TJJ |
| ) | |
| PHYSICIAN OFFICE PARTNERS, INC., ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

**NOTICE**

Within fourteen (14) days after a party is served with a copy of this Report and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to this Report and Recommendation. A party must file any objections within the fourteen-day period if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition. If no objections are timely filed, no appellate review will be allowed by any court.

**REPORT AND PROPOSED FINDINGS**

Plaintiff has filed a motion for sanctions[1] stemming from the deposition of Defendant's corporate representative. Plaintiff claims the corporate representative was unprepared to testify, and the parties had to reconvene for a second deposition. Plaintiff seeks $7,722.60 in attorneys' fees and costs for the second deposition and preparing the motion for sanctions. Defendant argues its corporate representative "prepared diligently" and testified adequately and to the best

---

[1] ECF No. 65.

of her ability; thus, sanctions are inappropriate.[2] For the reasons discussed below, the Court recommends the motion be granted in part.

## I. Background

The Court previously extended the discovery deadline in this case as a result of this issue. Plaintiff requested an extension of the discovery deadline to conduct a second deposition of Defendant's corporate representative, which Defendant opposed. The Court granted the motion in part[3] and extended the discovery deadline to allow the second deposition. Although the Court discussed the relevant background of this issue in its August 30, 2019 order, the Court will briefly revisit the issue here.[4]

On August 8, 2019, Plaintiff deposed Defendant's designated corporate representative, Kathleen Needleman, pursuant to Plaintiff's Second Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition for Physician Office Partners, Inc.[5] Defendant did not object to Plaintiff's notice. During Ms. Needleman's deposition, she answered multiple questions with "I don't know" or "I have no idea." Plaintiff argued this lack of preparedness required a follow-up deposition. Defendant argued that in preparing for her deposition, Ms. Needleman met with counsel, reviewed "several hundred" documents, and talked to other witnesses who had personal knowledge of Plaintiff's claims, and she was able to speak to the majority of the deposition topics. Further, it argued much of the information Plaintiff sought had already been obtained

---

[2] ECF No. 66.

[3] Plaintiff stated Defendant's corporate representative was unprepared to testify about 13 topics but failed to specify the topics at issue. The Court therefore granted the motion as to the seven topics Plaintiff specifically mentioned. *See* ECF No. 47.

[4] The following discussion of the relevant history is taken from the Court's August 30, 2019 order (ECF No. 47).

[5] ECF No. 38.

from the depositions of other witnesses or from Defendant's responses to Plaintiff's discovery requests.

The Court found Ms. Needleman had not responded adequately to noticed deposition topics. And, that it appeared the other witnesses Defendant relied on in its argument that Plaintiff received sufficient information from other sources in fact did not provide sufficient answers with regard to the topics at issue. Further, those witnesses were not Defendant's designated corporate representative(s), and, pursuant to Fed. R. Civ. P. 30(b), Plaintiff is entitled to elicit testimony from the corporation itself, regardless of testimony from other witnesses or discovery responses. The Court ordered the discovery deadline be extended to allow Plaintiff to either depose Ms. Needleman again or another corporate representative of Defendant's choosing, so long as such corporate representative was sufficiently prepared to testify on behalf of Defendant to the topics Plaintiff identified in its motion.

The second deposition took place on September 26, 2019.[6] Defendant selected Lauren Hidaka, Plaintiff's supervisor, to appear for the second deposition, rather than Ms. Needleman.[7] Plaintiff now seeks sanctions in the form of costs for the second deposition and attorneys' fees incurred in connection with the second deposition and preparing the pending motion.

## II.    Legal Standard

"[P]roducing an unprepared witness for a Rule 30(b)(6) deposition 'is tantamount to a failure to appear at a deposition ...,' and therefore constitutes sanctionable conduct under Fed. R. Civ. P. 37(d)(1)(A). Therefore, if a Rule 30(b)(6) witness is not adequately prepared to testify about topics properly identified in a notice to take the deposition, the court may impose various

---

[6] ECF No. 65 at 2.

[7] ECF No. 66 at 2–3.

3

types of sanctions, including the imposition of reasonable attorneys fees and expenses caused by the failure, unless the failure was 'substantially justified'"[8] pursuant to Fed. R. Civ. P. 37(d)(3). "A party does not fulfill its obligations at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available."[9]

### III. Analysis

    a. Whether sanctions are appropriate

Defendant argues it reasonably prepared Ms. Needleman for her deposition, but her deposition answers show otherwise. Defendant states Ms. Needleman's testimony was not first-hand knowledge but was based on her review of documents and conversations with other employees. However, in a number of instances Ms. Needleman did not respond with information that she was told or with something she had read. Instead, her answers indicated that she didn't know or lacked information needed to answer the questions:

> Q. When they received these resumes from Kforce or from wherever they received their resume, how did they determine which candidate to interview?
> A. I don't know. I would assume it would be based on experience, but that –
> Q. You don't know, one way or the other?
> A. No. I think they just had a need and if they felt the person had some experience, they would interview them. That would be my guess.[10]
>
> Q. …It's my understanding that Data Abstractor I and Data Abstractor IIs were actually performing the same job duties and responsibilities as early as February of 2017. Would you agree with that?

---

[8] *Cherrington Asia Ltd. v. A & L Underground, Inc.*, 263 F.R.D. 653, 658 (D. Kan. 2010) (quoting *Starlight International, Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999)) (internal citations omitted).

[9] *Miller v. NEP Grp., Inc.*, No. 15-CV-9701-JAR, 2016 WL 6395205, at *11 (D. Kan. Oct. 28, 2016) (citing *Starlight International, Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999)).

[10] ECF No. 65-2 at 14; Needleman Dep. 124:3–11.

A. I don't have knowledge to agree or disagree.[11]

Q. Topic 11, for example, is POP's policies, procedures, and practices for setting performance expectations for individuals employed in the Quality Assurance and Quality Reporting Departments during plaintiff's employment, including quota expectations for abstractors and any consequences for not meeting said quotas. Did I read that correctly?
A. Yes, you did.
Q. But you are not prepared to talk about the performance expectations for the Quality Assurance Department back in 2017, are you?
A. No, sir.[12]

Q. When was Lauren Hidaka made aware of the charge of discrimination?
A. I don't know. I don't know, to be honest with you, if Lauren received it first -- oh, Lauren -- I am thinking Lynn. I don't know when Lauren would have. It would have -- when I say, HR, it would have either went to Lynn or Deb, one or the other. I don't know when Lauren was made aware of it, to be honest with you.
Q. You don't know. So Lauren, as the supervisor, they would have gone to her to discuss the charge, though; right?
A. I would assume so, yes.
Q. You don't know, one way or the other, but you assume they would have?
A. Yes.[13]

Q. POP and Envision, what is their net worth for the years of 2017 to 2018?
A. I have no idea, to give you an honest answer.
Q. Do you see Topic 34 there on the Deposition Notice?
A. Defendant's net worth for 2017 and 2018. I do see it. I would have to do my research. I don't know, off the top of my head. I would have to ask our finance department. I don't know.
Q. And you know that you were the person who was designated by the company to know all of this stuff?
A. Yes. I'll be honest with you, I didn't know I had to know the net worth.[14]

---

[11] ECF No. 65-2 at 3; Needleman Dep. 30:8–14.

[12] ECF No. 65-2 at 9–10; Needleman Dep. 81:20–82:6.

[13] ECF No. 65-2 at 17–18; Needleman Dep. 146:22–147:14.

[14] ECF No. 65-2 at 22–23; Needleman Dep. 167:25–168:14.

5

Additionally, Defendant states Ms. Needleman spoke to Vice President of Human Resources Deb Taylor and Ms. Hidaka to prepare for her deposition, but Ms. Needleman testified that she only spoke to Ms. Hidaka once for about an hour or an hour and a half.[15] And, as just shown, Ms. Needleman clearly did not obtain information regarding all necessary topics from Ms. Hidaka, including when Ms. Hidaka, as Plaintiff's supervisor, was made aware of the charge of discrimination that is the basis for this lawsuit.[16]

Defendant concedes that Ms. Taylor and Ms. Hidaka were the only individuals besides Plaintiff "with personal knowledge of the facts relating to Plaintiff's claims and POP's policies and procedures during her employment."[17] Yet, after reviewing Plaintiff's Rule 30(b)(6) deposition topics, to which Defendant asserted no objections, Defendant chose to designate Ms. Needleman as its corporate representative.

It seems clear that Ms. Needleman was unable to answer questions focusing on several topics in Plaintiff's deposition notice. Defendant continues to argue Plaintiff received the information through other deposition testimony or written discovery responses. But again, as the Court noted in its previous order on this issue, Plaintiff is entitled to elicit testimony binding on the corporation itself. If Defendant wanted to be bound by Ms. Taylor's or Ms. Hidaka's deposition testimony, it should have designated either of them as its corporate representative instead of Ms. Needleman. Indeed, Defendant did designate Ms. Hidaka as its corporate

---

[15] *See* ECF No. 66-1 at 2; Needleman Dep. 10:13–20 ("Q: Did you meet with anybody else, besides Lauren and your attorneys? A. No, sir. Q. How long did you spend in your meeting with Lauren Hidaka? A. Probably -- it was -- I didn't fly out there. It was a phone conversation. So I would say, generally, an hour to an hour and 30 minutes.").

[16] It is worth noting that Ms. Hidaka testified that she was unaware of Plaintiff's charge of discrimination. *See* ECF No. 42-1 at 26; Hidaka Dep. 100:23–24.

[17] ECF No. 66 at 3.

representative for the second deposition. Further, as the Court found in its earlier order, Ms. Hidaka and Ms. Taylor were unable to testify to several issues as well.[18]

The Court understands Ms. Needleman was not Defendant's HR representative; rather, she was the HR representative for the larger company with which Defendant merged and had to take over Defendant's HR department when Ms. Taylor left the company in March 2019.[19] However, that does not excuse her from testifying knowledgably on behalf of Defendant, when she was designated as its Rule 30(b)(6) corporate representative, regarding the topics provided in advance by Plaintiff.

Defendant cites *Coltrane v. Crawford Cty. Bd. of Cty. Comm'rs*[20] in opposition to Plaintiff's request for sanctions. In that case, the Court granted the plaintiff's motion to compel but found sanctions to be inappropriate. But in *Coltrane*, the issue was whether a witness who had already been deposed merely as a fact witness could be compelled to testify a second time as the defendant's corporate representative. The Court granted the motion to compel but found the issue in dispute between the parties to be "extremely close," and therefore found sanctions were not appropriate.[21]

Here, the issue is whether Defendant should be sanctioned for failing to produce a prepared corporate representative, when the representative had not previously been deposed and Defendant had not objected to either the deposition itself or any of Plaintiff's deposition topics. "If the designated persons 'do not possess personal knowledge of the matters set out in the deposition notice, the [entity] is obligated to prepare the designees so that they may give

---

[18] *See generally* ECF No. 47 at 3.

[19] ECF No. 66 at 2.

[20] No. 14-2164-JWL-KGG, 2015 WL 4496289 (D. Kan. July 23, 2015).

[21] *Id.* at 2.

knowledgeable and binding answers for the [organization].'"[22] And, "[t]he mere fact that a party later has opportunity to again depose the representative does not cure the initial inadequacy of the witness."[23]

It is clear to the Court, as it was when Plaintiff first raised this issue, that Ms. Needleman was unprepared to testify about several topics identified on the Rule 30(b)(6) deposition notice, resulting in the need for a second deposition. This caused Plaintiff to incur additional costs, which Plaintiff now seeks in the form of sanctions. Whether to impose sanctions is within the discretion of the Court. "In considering the imposition of sanctions, the court must consider on a case-by-case basis whether a party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate."[24] Corporations "have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter."[25]

Defendant has "engaged in sanctionable misconduct by failing to adequately prepare [its] representative for deposition."[26] Rule 37(d)(3) allows for various sanctions, including requiring "the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Because Plaintiff seeks only costs and

---

[22] *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999) (citing *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.), aff'd, 166 F.R.D. 367 (1996)).

[23] *Id.* at 640.

[24] *Id.* at 646 (quoting *United States v. A & P Arora, Ltd.*, No. Civ.A. 92–2185–KHV, 1993 WL 461914, at *2 (D. Kan. Oct. 29, 1993), aff'd, 46 F.3d 1152, 1995 WL 18276 (10th Cir.1995)); *see also*, D. Kan. Rule 11.1(c).

[25] *Id.* at 639.

[26] *Id.*

attorneys' fees associated with the second deposition and briefing the present motion, the Court does not consider any other sanctions. For all the reasons set forth above, the Court recommends a finding that Defendant failed to adequately prepare Ms. Needleman for her Rule 30(b)(6) deposition such that Plaintiff was unable to obtain answers to several of her deposition topics, resulting in a second deposition. The Court also recommends a finding that such failure was not substantially justified, and that monetary sanctions should be imposed as a result.

      b.   <u>Whether Plaintiff's proposed sanctions are reasonable</u>

Defendant's response is focused on the sufficiency of Ms. Needleman's responses in her deposition. Defendant does not address Plaintiff's claim that Defendant failed to pay the costs of the second deposition or argue that Plaintiff's proposed attorneys' fees are unreasonable. Plaintiff seeks $7,722.60 in attorneys' fees and costs from the second deposition. Specifically, Plaintiff requests $1,092.60 for the costs associated with the second deposition, $1,860 for Marc Middleton's attorney's fees, and $4,770 for Megan Lowe Stiles' attorney's fees.[27] In support, Plaintiff attached invoices and affidavits from counsel regarding their hourly rates.[28]

After a finding that monetary sanctions are appropriate, the Court must determine whether Plaintiff's requested amount of attorney's fees is reasonable. "In determining reasonable attorney fees, the starting point for determining the amount of a reasonable fee is the 'lodestar' figure, which is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"[29] Plaintiff, as the party requesting attorney's fees, "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly

---

[27] ECF No. 65 at 9.

[28] ECF Nos. 65-4, 65-5, and 65-6.

[29] *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-cv-1094-JTM-TJJ, 2018 WL 1992413, at *2 (D. Kan. Apr. 27, 2018) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).

rates."[30] The Court may adjust the lodestar as necessary.[31] The Court must refer "to the prevailing market rates in the relevant community" when examining the hourly rate.[32]

Ms. Stiles' listed hourly rate is $300. Mr. Middleton's listed hourly rate is $600. As support for the reasonableness of their hourly rates, Plaintiff's counsel attached pages from the 2020 edition of the Corporate Counsel Desk Book showing representative and highest outside counsel billing rates in Missouri and specifically Kansas City.[33] Defendant does not argue that Plaintiff's counsel's hourly rates exceed the prevailing market rates charged by lawyers of comparable skill and experience in this type of litigation.

This Court has previously found a $400 hourly rate, and even a $600 hourly rate, reasonable.[34] Based on the Court's own knowledge and other cases in this district approving similar rates,[35] the fact that the rates charged by Plaintiff's counsel are within and consistent with the rates reflected in the Corporate Counsel Desk Book for the Kansas City area, and because Defendant does not argue the submitted hourly rates are unreasonable, the Court finds Plaintiff's counsel have made a sufficient showing that their hourly rates are reasonable.[36]

---

[30] *S. Star Cent. Gas Pipeline, Inc. v. Cline*, No. 10-cv-2233-JAR-DJW, 2011 WL 3847156 at *1–2 (D. Kan. Aug. 30, 2011).

[31] *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-cv-1094-JTM-TJJ, 2018 WL 1992413, at *2 (D. Kan. Apr. 27, 2018) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).

[32] *Id.* at *3.

[33] ECF No. 65-7.

[34] *See Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017).

[35] *See, e.g.*, *King v. Fleming*, No. 16-2108-JAR-GLR, 2017 WL 1135579, at *2 (D. Kan. Mar. 27, 2017) (approving $200 hourly rate for Kansas City attorney as "exceedingly reasonable" in light of attorney's experience, the complexity of the case, and hourly rates typically approved); *Schoonover v. Colvin*, No. 12-1469-JAR, 2016 WL 7242512, at *2 (D. Kan. Dec. 15, 2016) (approving reduced hourly rate of $400 for Wichita attorney); *Rogers v. Bank of Am., N.A.*, No. 13-1333-CM, 2014 WL 6632944, at *2 (D. Kan. Nov. 21, 2014) (finding $300 partner and $225 associate hourly rates were in line with prevailing Wichita market rates).

[36] Although Mr. Middleton's rate is "on the high end of the approvable range," he spent only 3.1 hours attending and traveling to and from the second deposition, and no time on the motion for sanctions, so the Court finds his rate submission reasonable. *See Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017).

Next, the Court considers whether the claimed number of hours expended was reasonable. Mr. Middleton states he spent 2.3 hours attending the second deposition and .8 hours traveling to and from the second deposition. Ms. Stiles states she spent 3.8 hours preparing for the second deposition, 2.3 hours conducting the second deposition, .4 hours traveling to and from the second deposition, 6.9 hours drafting the present motion for sanctions, and 2.5 hours creating and compiling all of the exhibits for the motion for sanctions.

In order for a party requesting attorney's fees to meet its burden of proving the number of hours reasonably spent on the matter, the party must:

> [S]ubmit meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks. The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. The Court is justified in reducing the reasonable number of hours if the attorney's time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time.[37]

Although Defendant does not argue that the submitted time is unreasonable, applying the above standards, the Court finds that Plaintiff's requested hours must be substantially reduced. The fee request includes redundant or duplicitous time insofar as two attorneys billed time for travel to and from and for attending the second deposition. No explanation is provided as to why it was necessary for both attorneys to attend the deposition. The Court therefore finds that the reasonable hours for which Plaintiff may recover attorney's fees should include only the travel time and deposition time of one of Plaintiff's attorneys. In addition, the 6.9 hours submitted for drafting the instant motion and 2.5 hours for creating and compiling exhibits for the motion

---

[37] *S. Star Cent. Gas Pipeline, Inc. v. Cline*, No. 10-CV-2233 JAR/DJW, 2011 WL 3847156 at *2 (D. Kan. Aug. 30, 2011) (internal citations and quotations omitted).

11

appear unreasonable as block billing without sufficient detail and also excessive in light of the 2.3-hour deposition that is the underlying basis for the motion. The Court finds that the number of hours for drafting the instant motion, including putting together the exhibits, should be limited to 3 hours.

In summary, the Court recommends a finding that Plaintiff's hourly rates are reasonable, but the reasonable hours for which Plaintiff should be allowed to recover sanctions should be limited to the following:

Ms. Stiles' rate of $300/hour for 3.8 hours preparing for the second deposition and 3 hours drafting the instant motion and putting together the exhibits for the motion, plus $450/hour (the average of Ms. Stiles' rate and Mr. Middleton's rate of $600/hour)[38] for the 2.3 hours of the second deposition and .4 hours travel to and from the deposition. Thus, the Court recommends the reasonable amount Plaintiff should be awarded for attorneys' fees is $3,255. In addition, the Court finds Plaintiff's well-documented $1,092.60 costs of the second deposition are undisputed, reasonable, and should also be awarded to Plaintiff.

Accordingly, based upon its lodestar calculation, the Court recommends a total award of sanctions to Plaintiff in the amount of $4,347.60, and further recommends that Defendant be ordered to pay that amount to Plaintiff forthwith.

---

[38] The documentation provided by Plaintiff indicates Mr. Middleton attended but Ms. Stiles "conducted" the second deposition. The Court is not critical of Plaintiff for sending two attorneys to the second deposition. In fact, if Mr. Middleton as the more senior/experienced attorney was there to provide support and guidance while Ms. Stiles conducted the deposition, the Court finds that sort of mentoring and training is laudable and should be encouraged. Because Mr. Middleton's presence at the deposition may have contributed to the effective taking of the deposition, the Court recommends allowing the average hourly rate of Mr. Middleton and Ms. Stiles for the actual deposition time; however, the Court would not require Defendant to bear the cost of two Plaintiff's attorneys at the deposition.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED THAT** Plaintiff's Motion for Sanctions (ECF No. 65) be granted in part as set out herein.

Dated June 10, 2020, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge